IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL TROIANO SR.,

      Plaintiff

CIVIL ACTION NO.:

    v.

**COMPLAINT**

COUNTY OF ALLEGHENY; ALLEGHENY
COUNTY JAIL; ORLANDO HARPER,
individually as Warden for the Allegheny County
Jail,

      Defendants.

**JURY TRIAL DEMANDED**

Filed on behalf of Plaintiff:
Daniel Troiano, Sr.

ROBERT S. RICHMAN, Esq.
Pa. I.D. No.: 88673

R. HAGEN STARZ, Esq.
Pa.I.D. No.: 91210

Allied Legal Partners
220 Grant Street
3rd Floor
Pittsburgh, PA 15210
Telephone:   (412) 533-3330
Facsimile:   (412) 533-3340

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL TROIANO, SR.

       Plaintiff

     v.

COUNTY OF ALLEGHENY; ALLEGHENY
COUNTY JAIL; ORLANDO HARPER,
individually as Warden for the Allegheny County
Jail,

       Defendants.

CIVIL ACTION NO.:

**COMPLAINT**

**COMPLAINT**

    NOW, comes the Plaintiff, DANIEL TROIANO SR., by and through his attorneys, Robert S. Richman, Esq. and R. Hagen Starz, Esq., and, files the herein Complaint against the Defendants and avers as follows:

**INTRODUCTION**

1.    This matter regards the pretextual constructive discharge of Daniel Troiano Sr., from his employment at the Allegheny County Jail ("ACJ") on May 11, 2014.

2.    At the time of his constructive discharge, Plaintiff was employed as a Captain at the Allegheny County Jail ("ACJ").

3.    Plaintiff worked full time as a salaried employee on behalf of Allegheny County.

4.    Plaintiff began his career on April 21, 1986 and worked at ACJ for 28 years until he was constructively discharged on May 11, 2014.

5.      At the time of the constructive discharge, Plaintiff was earning approximately $72,580 per year.

6.      During the last two years of his employment and at all times relevant hereto, Plaintiff suffered from a heart condition that required him to request leave pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.*

7.      Plaintiff had been granted FMLA leave and took time off intermittently due to his serious health condition.

8.      In September 2013, Plaintiff suffered a heart attack while working at the ACJ.

9.      Plaintiff returned to work following his heart attack and was able to perform the essential job tasks associated with his job as a Captain at the ACJ.

10.     On or about February 19, 2014, during a management meeting, Warden Orlando Harper chastised his staff for taking too many days off.

11.     During the meeting, Defendant Harper made several stray remarks to Plaintiff about missing time from work including the remark, "I don't understand. How can a Captain have stress?"

12.     Defendant Harper's comment at the February 19, 2014 meeting was an obvious reference to Plaintiff's use of FMLA time for his heart condition.

13.     On February 20, 2014, the *Pittsburgh Post-Gazette* published an article indicating that employees at the Allegheny County Jail used 25% more FMLA time than the national average.

14.     Plaintiff's employer, the Allegheny County Jail, is subject to FMLA.

15.    Plaintiff worked for the Allegheny County jail for greater than twelve (12) months and one thousand two hundred fifty (1,250) hours within the twelve (12) months to qualify for FMLA protection.

16.    All Defendants herein are an "employer" within the meaning and as defined by all applicable and governing legislative enactments through which relief is sought herein.

## JURISDICTION AND VENUE

17.    Jurisdiction over this action is conferred upon this Court by 28 U.S.C. §1331 and 28 U.S.C. §1343. District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

18.    Pursuant to 28 U.S.C. §1367, there is supplemental jurisdiction over Plaintiff's interrelated state claims, as they are so related to claims in the action within original jurisdiction that they form part of the same controversy under Article III of the United States Constitution.

19.    Venue is proper under 28 U.S.C. §1391(b).

20.    The events giving rise to this action took place in this judicial district.

## PARTIES

21.    Plaintiff Daniel Troiano, Sr. is a Pennsylvania resident and resides in this district. Plaintiff was employed as a Captain at the Allegheny County Jail.

22.    Defendant Allegheny County is a municipality and/or governmental body and/or entity organized as a Second Class County political subdivision in the Commonwealth of Pennsylvania with a principal place of business located at 950 Second Avenue, Pittsburgh, Pennsylvania 15219. The County of Allegheny operates and controls the Allegheny County Jail through its Bureau of Corrections.

23.     Upon information and belief, Allegheny County owned, possessed, was in control of, and/or responsible for the operation of the Allegheny County Jail.

24.     The Allegheny County Jail is a correctional facility run by Allegheny County, Bureau of Corrections, which is headquartered at 950 Second Avenue, Pittsburgh, Pennsylvania 15219.

25.     Defendant Orlando Harper is the Warden of the Allegheny County Jail and is a resident within this judicial district.

## COUNT I
## FMLA RETALIATION

26.     Plaintiff incorporates all prior paragraphs herein as if set forth at length below.

27.     At all times relevant hereto, Plaintiff enjoyed the protections of the FMLA based on the fact that he worked for a governmental entity and satisfied the minimum work requirements contained within the Act.

28.     Defendant Allegheny County qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. §2611(4).

29.     Defendant ACJ qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. §2611(4).

30.     Defendant Orlando Harper qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. §2611(4).

31.     Plaintiff was an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. §2611(2).

32.     Plaintiff enjoyed "entitlement to leave" as defined in the FMLA, 29 U.S.C. §2612(a)(1) as he needed to help alleviate stress due to his serious health condition.

33.     Plaintiff suffered from a "serious health condition" as defined by the Family Medical Leave Act of 1993, 29 U.S.C. §2611(11).

34.     Plaintiff had requested and was granted intermittent leave pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.*, at various time leading to his constructive discharge including in 2012, 2013, and 2014.

35.     Plaintiff suffered a pretextual discharge as a result of exercising the protections afforded him under FMLA.

36.     On May 1, 2014, Corrections Officer Sonja Nugent entered the prison inadvertently carrying her personal firearm.

37.     Following the May 1, 2014 incident, Plaintiff received a telephone call from his superior, Major Wainright, indicating that Plaintiff was suspended without pay and was no longer permitted on the jail premises.

38.     After speaking with Major Wainwright, Plaintiff communicated via telephone with Major DeMore who told Plaintiff that he prepared a letter regarding Plaintiff's alleged violations of ACJ policy stemming from the May 1, 2014 incident.

39.     Major DeMore advised Plaintiff that his hearing date was May 12, 2014 and that his options were either to resign or to risk termination and loss of pension.

40.     Major DeMore indicated that the ACJ intended to terminate the Plaintiff and, therefore, his pension would be imperiled.

41.     DeMore's conversation with Plaintiff indicated that Plaintiff was going to be terminated and that he should resign and protect his pension that he had accumulated during his 28 year career.

42.     Because of Plaintiff's suspension without pay, the threat of discharge, and the urging of Demore to resign, Plaintiff resigned on May 11, 2014, to preserve his pension in what amounts to a pretextual constructive discharge.

43.     During and around the relevant time period of these events, a series of newspaper articles appeared in both the Pittsburgh Post-Gazette and the Tribune Review reporting the acknowledged problems that Allegheny County was having with the administration of FMLA.

44.     Defendants Allegheny County and Harper knew that Plaintiff had used FMLA time for disability.

45.     Indeed, Defendant Harper's stray remark at the February Managers meeting evidences Defendants' intentional efforts to punish those who availed themselves of FMLA.

46.     Plaintiff was subjected to a pattern of antagonism leading to the May 1, 2014 incident.

47.     Defendants knowingly and willfully constructively discharged Plaintiff.

48.     The constructive discharge was the product of the retaliatory measures employed by Defendants due to Plaintiff's use of FMLA time.

49.     As a result of Plaintiff's pretextual constructive discharge, Plaintiff has incurred, and is now incurring, a loss of wages and employment benefits, and other monetary losses from the date of termination as a direct result of the violation. The costs also include attorneys' fees and costs of the instant action.

WHEREFORE, pursuant to 29 U.S.C. §2617(a)(1), Plaintiff prays for relief as follows:

a)  That the Court order the Defendants to pay lost wages;

b)  That the Court order payment of lost benefits including lost insurance benefits and all other direct costs incurred as a result of the Defendants' violation;

c) That the Court order the payment of interest on lost wages and benefits- including interest on an award of back pay and front pay;

d) That the Court grant Plaintiff equitable relief including reinstatement pursuant to 29 U.S.C. §2617(a)(1)(B);

e) That the Court order the payment of liquidated damages in an amount equal to Plaintiff's lost wages and other benefits pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

f) That the Court order the payment of attorney fees and costs pursuant to 29 U.S.C. §2617(a)(3);

g) That the Court grant Plaintiff a jury trial;

h) That the Court grant Plaintiff all other relief that the Court deems just and proper;

i) That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct.

## COUNT II
## FMLA INTERFERENCE

50.     Plaintiff incorporates all prior paragraphs hereof by reference as if restated below.

51.     At all times relevant hereto, Plaintiff enjoyed the protections of the FMLA based on the fact that he worked for a governmental entity and satisfied the minimum work requirements contained within the Act.

52.     Defendant Allegheny County qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. §2611(4).

53.     Defendant ACJ qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. §2611(4).

54.     Defendant Orlando Harper qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. §2611(4).

55.     Plaintiff was an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. §2611(2).

56.     Plaintiff enjoyed "entitlement to leave" as defined in the FMLA, 29 U.S.C. §2612(a)(1) as needed to help alleviate stress.

57.     Plaintiff had requested and was granted intermittent leave pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.*, at various time leading to his constructive discharge including in 2012, 2013, and 2014.

58.     In September 2013, Plaintiff suffered a heart attack while working at the ACJ.

59.     Plaintiff returned to work following the heart attack and was able to perform the essential job tasks associated with his job as a Captain at the ACJ.

60.     On or about February 19, 2014, during a management meeting, Warden Orlando Harper chastised his staff for taking too many days off.

61.     During the meeting, Defendant Harper made several stray remarks to Plaintiff about missing time from work including the remark, "I don't understand. How can a Captain have stress?"

62.     Defendant Harper's comment at the February 19, 2014 meeting was an obvious reference to Plaintiff's use of FMLA time for his serious health condition relating to his heart.

63.     Defendant Harper's remarks constituted a thinly veiled threat to dissuade Plaintiff from exercising his rights under FMLA.

WHEREFORE, pursuant to 29 U.S.C. §2617(a)(1), Plaintiff prays for relief as follows:

a)  That the Court order the Defendants to pay lost wages;

b)  That the Court order payment of lost benefits including lost insurance benefits and all other direct costs incurred as a result of the Defendants' violation;

c) That the Court order the payment of interest on lost wages and benefits- including interest on an award of back pay and front pay;

d) That the Court grant Plaintiff equitable relief including reinstatement pursuant to 29 U.S.C. §2617(a)(1)(B);

e) That the Court order the payment of liquidated damages in an amount equal to Plaintiff's lost wages and other benefits pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

f) That the Court order the payment of attorney fees and costs pursuant to 29 U.S.C. §2617(a)(3);

g) That the Court grant Plaintiff a jury trial;

h) That the Court grant Plaintiff all other relief that the Court deems just and proper;

i) That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct.

Respectfully submitted,

ALLIED LEGAL PARTNERS

/s/ Robert Richman
Robert S. Richman, Esq.
Pa.I.D.: 88673

/s/ R. Hagen Starz
R. Hagen Starz, Esq.
Pa.I.D.: 91210

Allied Legal Partners
220 Grant Street
3rd Floor
Pittsburgh, Pennsylvania 15219
T: (412) 533-3330
F: (412) 533-3340

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of Plaintiff's Complaint was served on this 11th day

of May 2016, via United States Postal Service postage prepaid:

County of Allegheny
Allegheny County Jail
Orlando Harper
950 Second Avenue
Pittsburgh, Pennsylvania 15219

<u>/s/ Robert Richman</u>
Robert S. Richman, Esq.
Pa.I.D.: 88673

Allied Legal Partners
220 Grant Street
3rd Floor
Pittsburgh, Pennsylvania 15219
T: (412) 533-3330
F: (412) 533-3340